## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

SCOTT BAKER,

      Plaintiff,

v.

PAUL MONTRONE, PAUL MEISTER,
PERSPECTA TRUST, LLC, BAYBERRY
FINANCIAL SERVICES CORP., and
LIBERTY LANE SERVICE COMPANY
LLC.

      Defendants.

Civil Action No. 1:18-CV-00913-PB

## MEMORANDUM OF LAW IN SUPPORT OF SCOTT BAKER'S
## MOTION TO AMEND COMPLAINT

From May 2009 through his ultimate termination on December 8, 2017, Plaintiff Scott

Baker ("Baker") worked tirelessly to grow Perspecta Trust LLC ("Perspecta Trust") into a

world-renowned trust company.  Baker's success in growing Perspecta[1] was repeatedly and

consistently acknowledged by the company's co-founders, Paul Montrone ("Montrone") and

Paul Meister ("Meister"), until Baker brought this action and Montrone and Meister crafted an

entirely new narrative about Baker-even going so far as to characterize Baker as

"untrustworthy," though they had designated him as the President of a trust company which

oversaw their own families' wealth and other high net worth clients' wealth for years without

complaint or issue.  Certainly, Baker refused to blindly follow Montrone's unscrupulous

spending habits which impacted Perspecta and its financial reporting and Meister's agreement to

undertake an engagement of the spouse of a very significant client, which gave rise to actual and

potential conflicts of interest between the client and spouse due to the fact that Perspecta knew

---

[1] "Perspecta" is used herein to describe Defendants Perspecta Trust LLC, Bayberry Financial Services Corp. and Liberty Lane Service Company, collectively.

that the two spouses had very different expectations for the disposition of the husband's multi-billion dollar estate upon his passing.  However, Baker's performance was never questioned by Montrone or Meister.  He simply was told that he "wasn't the right guy" after they learned that he and certain of his family members were suffering from disabilities.  Concluding that such disabilities did not fit the set image that Montrone and Meister had of Perspecta and its executive team, which image they desperately tried to maintain through psychological and medical examinations of prospective employees, they set out to completely remove Baker from Perspecta and its related companies.

Specifically, initial discovery revealed that Montrone and Meister embarked on a campaign to reduce Baker's ownership interest in various companies related to, and with ownership interests in, Perspecta Trust and ultimately freeze Baker out of the business he effectively built.  They decided they would terminate Baker, but before telling him of any performance issues or their termination plans, Montrone and Meister conspired to redeem his valuable equity interest in Perspecta Holdings LLC ("Perspecta Holdings").  Baker did so, relying on Montrone and Meister's false statements and omissions and the loyalty they owed him as his business partners and managers of the closely held LLC.  Accordingly, based on the information Baker learned through Defendants' initial responses to interrogatories (served on February 19, 2019) and the depositions of Meister (March 7, 2019) and Montrone (April 3, 2019), Baker moves to amend his Complaint to: (1) add claims seeking equitable relief for breach of fiduciary duty, fraudulent inducement, unjust enrichment, breach of contract and retaliation in violation of 42 U.S.C. § 12101 *et. seq.* and RSA 354-A; and, (2) add Perspecta

4826-0133-6723.5

Holdings, Perspecta Entities, LLC ("Perspecta Entities") and Perspecta Investments LLC ("Perspecta Investments") as defendants.[2]

Rules 15(a) and 20(a)(2) of the Federal Rules of Civil Procedure embrace liberal amendment policies, and these policies apply unabated here.  See Brace v. Rite Aid Corp., 10-CV-290-LM, 2011 WL 320565, at *2 (D.N.H. Jan. 31, 2011) (holding that Rule 15(a) reflects "a liberal amendment policy" and that the court should freely give leave to amend "when justice so requires"); Staples v. NH State Prison, Warden, 14-CV-473-LM, 2015 WL 5097787, at *3 (D.N.H. Aug. 27, 2015) (holding a motion to add defendants is evaluated using the "same standard of liberality" that applies in evaluating whether a motion to amend should be granted). Rule 19(a) requires joinder of "necessary" parties, where, such as here, the joinder would not deprive the court of subject-matter jurisdiction.[3]  See Fed. R. Civ. P. 19.  A copy of Baker's proposed amended complaint (the "AC") is attached to Baker's Motion to Amend Complaint as Exhibit A.

## I.      BACKGROUND

### a.   Procedural Background

Having exhausted his administrative remedies, Baker initiated this action on October 6, 2018, for retaliation, discrimination, hostile work environment in violation of 42 U.S.C. § 12101 *et. seq.* and RSA 354-A, and aiding and abetting discrimination in violation of RSA 354-A.  On November 23, 2018, the Parties executed a Joint Discovery Plan, which was subsequently amended by stipulation approved by this Court on March 26, 2019.  Under the revised Discovery

---

[2] As set forth more fully in Section II.a.ii.1 below, while the operative LLC Agreements for Perspecta Holdings, Perspecta Entities and Perspecta Investments call for the parties to arbitrate certain disputes, Baker retained the right to seek equitable relief in Court.

[3] Here, the court's subject-matter jurisdiction is based on 28 U.S.C. § 1331 and 28 U.S.C. § 1367.  Joining Perspecta Holdings, Perspecta Entities and Perspecta Investments would not destroy this court's subject-matter jurisdiction.

Plan, either party may add new claims or join additional parties up to and including May 30, 2019.  *See* ECF No. 20.

### b.  What Discovery Has Revealed

In 2009, Baker was contacted by an independent recruiter acting on behalf of Perspecta to explore a leadership role that Perspecta had been looking to fill for some time.  (AC, ¶ 14).  On April 30, 2009, Perspecta extended a job offer to Baker, which Baker accepted effective May 11, 2009 after a series of negotiations.  (AC, ¶ 15–16).  Throughout the course of his employment, Baker reported to Montrone and Meister—Perspecta's co-founders and majority owners. (AC, ¶ 26).  Montrone served as Perspecta's CEO, President (until succeeded by Baker) and Chairman of Perspecta Trust's Board of Directors.  (Id.).  Meister served as the Vice-Chairman of Perspecta Trust's Board of Directors.  (Id.).

Effective July 2012, pursuant to an Equity Award and Admission Agreement (the "2012 Equity Award"), Baker became a minority member in Perspecta Holdings, a valuable holding company, which held ownership interests in, among other things, Perspecta Trust and Ballentine Partners, another wealth management firm for which Baker joined the Board of Directors and helped oversee.  (AC, ¶ 19).[4]  Perspecta Holdings was a closely-held LLC, consisting only of Baker, Meister and two entities controlled by Montrone.  (AC, ¶ 20).  Montrone and Meister served as Perspecta Holding's co-managers.  (Id.).  Montrone has testified that he saw Baker as an owner and business partner with the accompanying expectation of fiduciary duties of good faith and loyalty.  (AC, ¶ 81).

Notwithstanding the fiduciary nature of the relationship between Montrone, Meister and Baker, and despite the mounting accolades Perspecta received under Baker's leadership (AC, ¶¶

---

[4] This equity was belatedly awarded, as it had been promised as part of Baker's employment offer in 2009.  (AC, ¶¶ 15–20, 71).

45–46), in late 2015, as Baker's health and the health of his family members' deteriorated, Montrone and Meister took active steps to freeze Baker out of Perspecta and its related entities. Discovery has revealed that in the fourth quarter of 2015, Montrone and Meister decided to "restructure" Baker's equity plan in a manner which, according to Montrone's and Meister's sworn deposition testimony, was intended to purposefully decrease the value of Baker's stake in the company in anticipation of a planned, but undisclosed, termination.  (AC, ¶ 73).  However, Montrone and Meister did not share their plans with Baker.  (AC, ¶¶ 73–74).  Rather, as set forth more fully in the AC, in the fourth quarter of 2015, Montrone informed Baker that he had plans to restructure Baker's equity in Perspecta Holdings to give more permanence to Baker's interests and to give Baker what Montrone termed "true equity," meaning that Baker's interest would be changed from a Class B membership interest (profits interest) to a Class A membership interest (capital interest).  (AC, ¶ 74).  Montrone conveyed to Baker that he was a valued owner of the company and that his vested interests in Perspecta Holdings would be replaced with a new equity structure that would be "much better" financially for Baker and indicated that Baker would welcome the changes.  (AC, ¶¶ 74–75, 131).

In January 2016, Montrone met with Baker to discuss the unilateral termination of the 2012 Equity Award and the corresponding buy-out price, which Baker asserted was unreasonably low.  (AC, ¶¶ 76, 132).  Though Montrone and Meister had already determined that Baker's equity would be restructured to his detriment, Montrone assured Baker that as a result of the "much better" replacement structure, Baker would not be harmed by the low redemption price.  (AC, ¶¶ 78, 132).  Specifically, Montrone told Baker that his re-entry price under his new equity plan with Perspecta Holdings would be the same as his redemption price so he would not be financially impacted.  (Id.).  Meister, admittedly knowing that Baker's new equity plan would

5

be far less favorable to Baker, did not inform Baker that it was decided that he would be offered a less favorable equity position in the company following his redemption and signed the Redemption Agreement as a manager of Perspecta Holdings.  (AC, ¶ 136).  As a result of Montrone's representations and Meister's omissions, Baker redeemed his valuable, vested interest in Perspecta Holdings at an unreasonably low price before Montrone and Meister presented him any information on his new, "much better" award.  (AC, ¶¶ 79, 133, 148).  Much later in 2016, when Montrone presented Baker with his new equity awards (the "2016 Equity Awards"), Baker learned that Montrone's representations regarding making Baker a more permanent member of Perspecta Holdings with a "much better" plan were false.  (AC, ¶¶ 83–86, 137, 149).  Indeed, the new 2016 Equity Awards replaced Baker's valuable interests in Perspecta Holdings with profits (not capital) interests in less valuable affiliated companies (not Perspecta Holdings) and on far less valuable monetary and non-monetary terms, and the new awards put Baker in a dramatically less favorable position, generally and particularly at the time of his termination. (AC, ¶ 137).

Montrone, Meister and Perspecta then made continuous efforts up to and including December 8, 2017 to force Baker to resign.  (AC, ¶¶ 57, 60).  When Baker refused to resign, Montrone and Meister terminated Baker's employment with Perspecta and caused Perspecta's Board of Directors to remove him as President.  (AC, ¶ 151).

At the time Montrone and Meister terminated Baker, Perspecta considered his termination to be without "Cause," as that term is defined by Baker's new 2016 equity plans. (AC, ¶ 64).  However, after Baker filed the instant action, Perspecta "changed" his termination from one without "Cause" to a termination for "Cause."  (Id.).  This "change" in Baker's termination purported to impact Baker's continued equity stake in the company, as it called for a

complete forfeiture of all of Baker's unvested equity interests as of December 8, 2017, rather than a full vesting of his equity interests as of that date.  (Id.).  Baker's "forfeited" Profits Units were returned to Perspecta Entities and Perspecta Investments.  Perspecta's answers to interrogatories served on February 19, 2019 were the first time Perspecta informed Baker that he was terminated for "Cause" and that his unvested Profits Units in Perspecta Entities and Perspecta Investments had been forfeited.  Baker also learned through his early discovery that his Profits Units were forfeited due to a "change" in the designation of his termination after the initiation of this lawsuit, and that Montrone and Meister intended, as early as 2015, to "restructure" Baker's equity interests in a manner that would substantially decrease his stake in the company.

### c.  New Defendants

#### i.  Perspecta Holdings

Perspecta Holdings redeemed Baker's vested 20% interest in Perspecta Holdings following the misrepresentations and omissions by Montrone and Meister in 2015 and 2016. (AC, ¶¶ 74–78, 131–132, 139, 146–149, 154–157).  Baker redeemed this interest based on his reasonable reliance on Montrone's misrepresentations and the lack of any contrary information from Meister (AC, ¶ 138).

#### ii.  Perspecta Entities and Perspecta Investments

Perspecta Entities and Perspecta Investments are the entities in which Baker had unvested profits interests at the time of his termination from Perspecta.  (AC, ¶¶ 84–85).  Perspecta Entities and Perspecta Investments improperly forfeited Baker's interests following Perspecta's *post hoc*, retaliatory decision to declare Baker's termination as a for "Cause" termination. (AC, ¶¶ 95, 158, 163–174).

## II.   ARGUMENT

### a. Rule 15 Supports Adding Claims of Breach of Fiduciary Duty, Fraudulent Inducement, Unjust Enrichment and Retaliation.

"[T]he district court enjoys significant latitude in deciding whether to grant leave to amend." Brace, 2011 WL 320565, at *2 (citing U.S. ex rel. Gagne v. City of Worcester, 565 F.3d 40, 48 (1st Cir. 2009)).  "Reasons for denying leave to amend include undue delay in filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment." Id.  None of these reasons apply here.

#### i. Baker brought this motion promptly, and allowing this motion will not result in undue delay or prejudice to the existing parties.

This is Baker's first motion to amend the Complaint.  Baker has brought this motion promptly upon learning new facts through the discovery process, including those facts learned from Meister's and Montrone's depositions, which occurred on March 7 and April 3, 2019 respectively.

The addition of these claims will not result in undue prejudice or delay to the Defendants. The revised Discovery Plan provides that any party may amend its claims or add additional parties up to and including May 30, 2019.  Moreover, prior to service of this motion, Baker informed Defendants of the substance of his proposed amended claims through correspondence as well as his answers to interrogatories, which detailed all relief sought by his proposed amended claims.  Indeed, on March 28, 2019, Defendants' counsel extensively questioned Baker at his deposition on the facts underlying Baker's proposed amended claims.[5]  Moreover, fact discovery in this matter does not close until August 30, 2019, giving Defendants almost four and a half months to take additional discovery concerning Baker's amended claims.  Accordingly,

---

[5] Baker's counsel sent the AC to Defendants' counsel on April 12, 2019.

Baker does not anticipate that adding these claims would result in the need to further extend the discovery plan in this matter, and Baker's proposed amendment would not cause undue delay or prejudice to Defendants.  See Halsey v. Litton Loan Servicing, 12-CV-511-PB, 2013 WL 3754919, at *1 (D.N.H. July 13, 2012) (arguments about undue delay and prejudice unsuccessful where plaintiff moved to amend within the time provided by the agreed-upon discovery plan and where the litigation was still at an early stage).

## ii.  Baker's AC is not Futile.

Finally, Baker's amended claims are not futile.  A proposed amendment is only futile if the "complaint, as amended, would fail to state a claim upon which relief can be granted."  See Halsey, 12-CV-511-PB, 2013 WL 3754919, at *2, quoting Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996).  The AC alleges sufficient facts plausibly supporting Baker's claims for relief.

## 1.  The proposed amended claims are properly before the Court.

Defendants have indicated that they object to the amendment concerning Baker's profits interests or equity interest, asserting that the claims are not properly before this Court on account of the alternative dispute resolution procedure provisions in Perspecta Entities' and Perspecta Investments' LLC Agreements.  This argument is unavailing, however, as Sections 13.4.9 of Perspecta Entities' and Perspecta Investments' LLC Agreements provide, in relevant part, that "[n]otwithstanding anything in this Section 13.4 to the contrary, if any party to this Agreement required . . . equitable relief, such party may file an action for such relief in the courts of the State of New Hampshire."  Baker's proposed AC seeks just that—equitable relief in the form of reinstatement of his equity interests.  This type of action is expressly permitted to be pursued in this Court.

The Defendants have also asserted that Baker cannot pursue claims arising from the redemption of his interests in Perspecta Holdings due to a release of claims in the Redemption Agreement itself.  However, "[u]nder New Hampshire Law, fraud in the inducement . . . can be raised to void a contract."  Lizzol v. Brothers Property Management Corp., 15-CV-100-SM, 2016 WL 6459670, *8 (D.N.H Oct. 31, 2016) (internal citations omitted) (recognizing that fraudulent inducement could have, if proven, voided a release of claims).  As Baker asserts that he was fraudulently induced to enter into the Redemption Agreement, the release contained in the Redemption Agreement does not bar his claims relating to the redemption of his equity interests in Perspecta Holdings at this stage of the proceeding.

2.  <u>Baker has alleged facts plausibly supporting each of his amended claims.</u>

i.  <u>Breach of Fiduciary Duty</u>

As managing members of a closely-held Delaware LLC—Perspecta Holdings— Montrone and Meister owed Baker fiduciary duties. Feeley v. NHAOCG, LLC, 62 A.3d 649, 661 (Del. Ch. 2012) ("[E]quitable fiduciary duties will apply by default to a manager or managing member of a Delaware LLC.").  As alleged more fully in the AC, Montrone and Meister breached those duties by launching their campaign against Baker to freeze him out of Perspecta and its related entities by making material misrepresentations and omissions to Baker to cause him to redeem his equity in Perspecta Holdings to benefit themselves and harm Baker in anticipation of a planned, but undisclosed termination.  (AC, ¶ 146).  Bennett v. Breuil Petroleum Corp., 99 A.2d 236, 239 (Del. Ch. 1953) ("[A]ction by majority stockholders having as its primary purpose the 'freezing out' of a minority interest is actionable without regard to the fairness of the price.").

ii.   <u>Fraudulent Inducement</u>

A defendant is liable for fraudulent inducement if the plaintiff establishes that the defendant "made a representation with knowledge of its falsity or with conscious indifference to its truth with the intention to cause another to rely upon it.  In addition, the party seeking to prove [fraudulent inducement] must demonstrate justifiable reliance."  <u>Lizzol</u>, 2016 WL 6459670, at *8; <u>see also</u> <u>Snierson v. Scruton</u>, 761 A.2d 1046, 1049 (N.H. 2000), as modified (Nov. 22, 2000).  Issues concerning knowledge, intent and reliance are inherently factual and not appropriate for resolution on a motion to dismiss.  <u>See, e.g.</u>, <u>Hall v. Gascard</u>, 2017 WL 2543901 (D.N.H. June 12, 2017) ("[T]he reasonableness of a party's reliance is a factual question.").

Here, Montrone told Baker that his 2012 Equity Award would be replaced with a "much better" equity structure, that he was restructuring Baker's equity in Perspecta Holdings to give more permanence to Baker's interests in Perspecta Holdings (i.e. capital interests) and to give Baker what Montrone termed "true equity," and that Baker would not be harmed by redeeming his interests in Perspecta Holdings at the low value because the re-entry price under his new equity awards would be the same.  Montrone knew that these statements were false at the time he made them, yet he made these statements in an effort to induce Baker to redeem his interests in Perspecta Holdings.  Meister was aware of these material misrepresentations and failed to correct Baker's misimpressions prior to executing the Redemption Agreement.  Given their fiduciary relationship and the power dynamic among them, Baker's reliance on Montrone and Meister was reasonable and, indeed, necessary.  Based on these allegations, the AC pleads sufficient facts to establish that Montrone, Meister and Perspecta Holdings fraudulently induced Mr. Baker to give up his valuable, vested interest in Perspecta Holdings.  <u>See, e.g.</u>, <u>Moulton v. Bane</u>, 14-CV-265-JD, 2016 WL 1091093, *10–11 (D.N.H March 21, 2016) (judgment entered for counterclaim

plaintiff who established that counterclaim defendant misrepresented that counterclaim plaintiff would have a substantial ownership interest in a new company, which misrepresentation counterclaim plaintiff justifiably relied on in entering a business venture).

### iii.    Unjust Enrichment

Perspecta Holdings, Perspecta Entities and Perspecta Investments were unjustly enriched as a result of Montrone's and Meister's actions.  A plaintiff in an unjust enrichment case is not required to prove "that the defendant obtained the benefit through wrongful acts; passive acceptance of a benefit may also constitute unjust enrichment." DesRoches v. Potter, 05-CV-088-PB, 2009 WL 1240726, at *2 (D.N.H. May 5, 2009).  Perspecta Holdings was unjustly enriched by redeeming Baker's 20% equity interest.  Similarly, Perspecta Entities and Perspecta Investments were unjustly enriched by causing Baker to "forfeit" his unvested Profits Units when his termination was improperly designated as a termination for "Cause" more than a year after his termination date.

### iv.    Breach of Contract

To prevail on a breach of contract claim, Baker must allege facts plausibly suggesting "(1) the existence of a valid and binding contract; (2) that plaintiff has complied with the contract and performed his own obligations under it; and (3) breach of the contract causing damages."  In re Tyco Intern., Ltd., No. 02–1335–B, 03–1343–B, 2004 WL 524429, at *3 (D.N.H. March 16, 2004).  Here, Baker had valid, binding contracts with Perspecta Entities and Perspecta Investments that governed the disposition of his Profits Units in those entities upon his termination from Perspecta.  (AC, ¶ 163–166).  Meister testified that Perspecta terminated Baker's employment without "Cause" on December 8, 2017.  (AC, ¶ 167).  However, Meister

4826-0133-6723.5

testified that after the commencement of this action, Perspecta "changed" the classification of Baker's termination to be deemed one for "Cause."  (AC, ¶ 168).

Under the terms of the 2016 Equity Plans between Baker and Perspecta Entities and Perspecta Investments, when Baker was terminated without "Cause" on December 8, 2017, all of his unvested Profits Units in Perspecta Entities and Perspecta Investments should have vested. (AC, ¶ 166).  However, discovery has revealed that in breach of their contractual obligations, rather than treating Baker's Profits Units as "vested," Perspecta Entities and Perspecta Investments forfeited any of Baker's Profits Units that had not vested as of December 8, 2017— either by failing to properly accelerate the vesting of Baker's Profits Units on December 8, 2017, or by "reversing" the acceleration and deeming the shares forfeited following Perspecta's *post hoc* determination that Baker's termination was one for "Cause."  (AC, ¶¶ 169–170).  Based on these allegations, the AC pleads sufficient facts to support Baker's breach of contract claim against Perspecta Entities and Perspecta Investments, and such claim is not futile.

v.   <u>Retaliation</u>

To prevail on a retaliation claim under 42 U.S.C. 12101 or RSA 354-A, a plaintiff must show that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and, (3) the protected activity and adverse employment action were causally connected.  <u>Madeja v. MPB Corp.</u>, 821 A.2d 1034, 1043 (N.H. 2003) (detailing identical frameworks for retaliation claims under RSA 354-A and Title VII); <u>Hubbard v. Tyco Integrated Cable Sys., Inc.</u>, 985 F. Supp. 2d 207, 227 n.4 (D.N.H. 2013) (holding that a retaliation claim under the Americans with Disabilities Act, 42 U.S.C. 12101, is analyzed under the same framework as a Title VII claim). Baker engaged in a protected activity when he initiated this action for discrimination and retaliation under 42 U.S.C. § 12101 *et. seq.* and RSA 354-A.  Montrone, Meister and Perspecta

13

retaliated against Baker due to his filing of this action by "changing" the designation of his

termination to be a termination for "Cause," resulting in the purported forfeiture of Baker's

unvested Profits Units in Perspecta Entities and Perspecta Investments.

### b. Rules 19 and 20 Support Joinder of Perspecta Holdings, Perspecta Entities and Perspecta Investments.

Federal Rule of Civil Procedure 19(a)(1) provides that

A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i)     as a practical matter impair or impede the person's ability to protect the interest; or

(ii)    leave an existing party subject to substantial risk of . . . inconsistent obligations because of the interest.

Under this standard, Perspecta Holdings, Perspecta Entities and Perspecta Investments

are required to be joined.  The AC seeks to add Perspecta Holdings to the fraudulent inducement

and unjust enrichment claims, and to add Perspecta Entities and Perspecta Investments to the

unjust enrichment and breach of contract claims.  These entities are necessary parties to this

action under Rule 19, as the relief sought by Baker—reinstatement of his equity interests in these

entities—cannot be awarded in their absence, as they hold the interests he seeks to reclaim.  If

Perspecta Holdings, Perspecta Entities or Perspecta Investments are not joined, Baker runs the

risk that any equitable relief afforded by the court in their absence would not be binding on them.

Moreover, Baker runs the risk that he could not enforce his equitable relief without potentially

running afoul of an inconsistent ruling in any subsequent proceeding involving the same issues.

See Spencer v. Eversource Energy Service Co., 16-CV-353-JL, 2017 WL 4326481, at *3–4

(D.N.H Sept. 28, 2017) (Easement owner and lessee were required parties where declaratory judgment regarding easement would not be binding on them and plaintiff ran the risk that enforcement would run afoul of an adverse judgment in a subsequent proceeding.).  Moreover, Perspecta Holdings', Perspeta Entities' and Perspecta Investments' interests are directly implicated by Baker's amended claims, and to dispose of such claims in their absence would impair their ability to protect any interests they may have with respect to Baker's claims.  Id. at *4 (owner and lessee of an easement were required parties in litigation concerning easement).  Accordingly, Perspecta Holdings, Perspecta Entities and Perspecta Investments should be joined under Rule 19(a).

Regardless, even if these entities are not "necessary" within the meaning of Rule 19(a), they may be permissively joined under Fed. R. Civ. P. 20(a).  Rule 20(a)(2) provides that additional defendants may be added to an action if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  "As long as the parties meet the test for permissive joinder, courts generally allow joinder unless other considerations, such as avoiding prejudice and delay, assuring judicial economy, or safeguarding fundamental fairness counsel otherwise." Abraham v. Allen Mello Dodge, Inc., 11-CV-329-JD, 2011 WL 4625686, at *3 (D.N.H. Oct. 3, 2011).

The claims against Perspecta Holdings, Perspecta Entities and Perspecta Investments arise out of the same transactions and occurrences as the claims pressed against the other defendants—Baker's termination and his loss of his equity interests.  The AC presents questions of law and fact common to all defendants, including those sought to be added.  The purposes of

Rule 20 are served by adding Perspecta Holdings, Perspecta Entities and Perspecta Investments as defendants thereby avoiding duplicative litigation.  Addition of these parties and amendment of Baker's complaint promote judicial economy and trial convenience, as the proposed amendments and joinder will avoid the need to initiate a separate proceeding in which discovery, depositions, and trial testimony will substantially overlap with the present action.  As discussed in Section II.a.i, adding these parties as defendants will not result in delays nor prejudice the Defendants, who have long been aware of the facts underlying the claims against these parties.

## **CONCLUSION**

For the reasons stated more fully above, Baker respectfully requests that this Court allow his Motion to Amend Complaint in its entirety.

Respectfully submitted,

SCOTT BAKER,
By his attorneys,

*/s/Jennifer L. Mikels*
Teri L. Pastori (#12136)
Beth A. Deragon (# 16347)
PASTORI | KRANS, PLLC
70 Commercial Street, Suite 203
Concord, NH 03301
(603) 369-4769
tpastori@pastorikrans.com
bderagon@pastorikrans.com

Jennifer B. Furey (BBO # 634174)
Admitted *pro hac vice*
Jennifer L. Mikels (BBO # 682199)
Admitted *pro hac vice*
GOULSTON & STORRS PC
400 Atlantic Avenue
Boston, Massachusetts 02110-3333
Telephone (617) 482-1776
Facsimile (617) 574-4112
jfurey@goulstonstorrs.com
Dated: April 24, 2019        jmikels@goulstonstorrs.com

4826-0133-6723.5

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document filed through the ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the above date.


*/s/Jennifer L. Mikels*
Jennifer L. Mikels

4826-0133-6723.5