UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

———————————————————————

| | |
|---|---|
| SCOTT BAKER, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | )   Civil Case No. 1:18-cv-00913-PB |
| | ) |
| PAUL MONTRONE, PAUL MEISTER, | ) |
| PERSPECTA TRUST LLC, | ) |
| BAYBERRY FINANCIAL SERVICES | ) |
| CORP., LIBERTY LANE SERVICE | ) |
| COMPANY LLC, | ) |
| PERSPECTA HOLDINGS LLC, | ) |
| PERSPECTA ENTITIES, LLC and | ) |
| PERSPECTA INVESTMENTS, LLC, | ) |
| | ) |
| Defendants | ) |

———————————————————————

### DEFENDANTS' MOTION FOR EXAMINATION OF PLAINTIFF'S MENTAL CONDITION PURSUANT TO F. R. CIV. P. RULE 35

Defendants Paul Montrone ("Montrone"), Paul Meister ("Meister"), Perspecta Trust LLC, Bayberry Financial Services Corp., and Liberty Lane Service Company LLC (collectively "Perspecta"), Perspecta Holdings LLC ("Perspecta Holdings"), Perspecta Entities, LLC ("Perspecta Entities"), and Perspecta Investments, LLC ("Perspecta Investments") by their attorneys, Jackson Lewis P.C., move this Court to permit Harold Bursztajn, M.D., to conduct a forensic psychiatric evaluation of the mental condition of plaintiff Scott Baker ("Baker") pursuant to Rule 35(a).[1]  In support of this Motion, defendants state as follows:

(1)     In this action, Baker claims that defendants Montrone, Meister and Perspecta discriminated and retaliated against him on the basis of his disability (real or perceived) and/or

---

[1] A copy of Dr. Bursztajn's résumé is attached, together with a copy of his summary description of a standard forensic evaluation.  *See* Exhibits 1 and 2.

on the basis of the disabilities (real or perceived) of his family members, including his wife Shawnee and his step-daughter Baylie in violation of the Americans with Disabilities Act ("the ADA") and RSA 354-A.

(2)    Specifically, Baker alleges that in November 2015, his wife Shawnee began to experience "deep depression" which required treatment and medication through 2016 following her diagnosis of cancer in September of 2015; that in late 2015,  his daughter began to suffer from mental health issues as a result of  cyberbullying and the death of her horse while she was at the Kent School in Connecticut; and that "around December 2015, as a result of his struggle to cope with his wife's and daughter's disabilities, Baker himself began experiencing significant anxiety and depression, which caused him to have difficulty sleeping, eating, concentrating and interfacing with others."  Amended Complaint, ¶ 35.

(3)    Baker claims that as his health deteriorated, defendant Meister began to disassociate himself from Baker, and that in May 2017, shortly after he complained to defendant Montrone about Meister's treatment of him, Baker was told by Montrone to look for another job. Amended Complaint, ¶¶ 39, 40, 52-54, 56.  He claims that as a result of the discrimination, harassment and retaliation, he has suffered significant harm, physically, emotionally and financially.  *Id*. ¶ 65.

(4)    Baker has admitted in his deposition that he never disclosed his depression or anxiety to anyone at Perspecta Trust, and he never requested any accommodations.  Baker Dep. at 172-174; 179. Instead, he told people that he was "having significant issues," and was "going through a number of severe and unpleasant life issues."  *Id.* at 174.

(5)    Under Rule 35(a), this Court must be satisfied that the plaintiff has put his mental condition "in controversy" and that there is "good cause" for the examination.  *Schlagenhauf v.*

*Holder*, 379 U.S. 104, 118-19, 13 L. Ed. 2d 152, 85 S. Ct. 234 (1964).  Baker has objected to a

forensic evaluation on the ground  that his "current medical condition is not an issue in this case,

and garden variety emotional distress resulting from acts of discrimination does not provide a

basis for seeking an IME under Rule 35."  *See* email dated August 27, 2019 from Attorney

Mikels, attached hereto as Exhibit 3.

(6)     Courts have generally found the mental condition of a party to be "in

controversy" where, *inter alia*,  the plaintiff has asserted "a specific cause of action for

intentional or negligent infliction of emotional distress;" the plaintiff has claimed "unusually

severe emotional distress; the plaintiff has alleged a specific type of disorder or other psychiatric

injury;" or the plaintiff has offered his own expert to supplement his claim of mental or

emotional injury.  *Walton v. N.C. Dep't of Agric. & Consumer Services*, 2011 U.S. Dist. LEXIS

25102 *7 (E.D. N.C. 2011), and cases cited.  All of these factors are present in Baker's claim for

compensatory damages for emotional distress resulting from intentional disability discrimination.

*Id.* at n. 1.

(7)     Baker claims more than "garden variety" emotional distress as a result of

defendants' alleged discrimination, harassment and retaliation.  *See,* e.g., *Denny v. Wingspan*

*Portfolio Advisors, LLC,* 2013 U.S. Dist.  LEXIS 78796 (N.D. Tex. 2013) (plaintiff who claimed

that she suffered major depressive order caused by "some of the things she [was] experiencing

while [she] was working for [Defendant]," who received professional medical treatment for the

depression, and who was still taking medication for anxiety related to depression," affirmatively

put her mental condition at issue.).

(8)     Baker claimed, under oath as recently as March 25, 2019, that "as a result of the

hostile, discriminatory and retaliatory treatment Defendants subjected Baker to," he has suffered

emotional distress, including "worsened depression, anxiety and insomnia," for which he has been treated by three psychiatrists;  he asserts that in 2016 and 2017 his emotional distress became so severe that he considered ending his life.  *See* Baker's Response to Interrogatory No. 13, a copy of which is attached as Exhibit 4 .  He was still on medication for anxiety as of his deposition in this case on March 28, 2019.  Baker's claim that the defendants' discrimination caused severe exacerbation of his depression, anxiety and sleep disorders, for which he received medical and psychological treatment, is sufficient to put his mental condition "in controversy" as his claim goes far beyond allegations of "generalized insult, hurt feelings and lingering resentment for which plaintiff seeks no diagnosis or treatment," or "garden variety" emotional distress.  *Denny*, 2013 U.S. Dist. LEXIS at *3.

(9)     Baker's claim that his "current" medical condition is not an issue in this case, and no Rule 35 examination should be allowed because he is not claiming that his mental injuries continued after he left his employment at Perspecta should be summarily rejected.  *See Beightler v. SunTrust Banks, Inc.,* 2008 U.S. Dist. LEXIS 36039 (W.D. Tenn. 2008) (plaintiff who alleged specific mental disorders resulting from intentional infliction of emotional distress by employer, but objected to examination because he was not claiming "on-going or permanent" mental injuries, was required to submit to examination because defendant was entitled to independent evaluation of the extent and duration of plaintiff's mental injuries);[2] see also *Walton v. N.C. Dep't of Agric. & Consumer Services*, 2011 U.S. Dist. LEXIS 25102 at n. 1 (E.D. N.C. 2011)

---

[2]Retrospective assessment of prior mental disorders and consequent impairments that have since been successfully treated, as well as of diagnoses made at the time of events in question, is a staple of forensic psychiatric evaluation in a variety of medical-legal contexts.  For example, forensic psychiatrists regularly evaluate criminal defendants' claims of insanity at the time of an alleged offense even though the defendant may no longer be psychotic after having been medicated.[2]  *See, e.g.,* Goldstein AM, Bursztajn HJ. Capital litigation: Special considerations.  In Drogin EY, Dattilio FM, Sadoff RL, Gutheil TG (Eds.), *Handbook of Forensic Assessment: Psychological and Psychiatric Perspectives.* Hoboken, NJ: John Wiley & Sons; 2011: 145-170.  Cf. other publications in Dr. Bursztajn's resume.

(noting that plaintiff's mental condition remained "in controversy" as to the discrimination claims under Title VII asserted against the defendant "inasmuch as plaintiff's allegations of emotional injury may influence the award of compensatory damages which the plaintiff seeks.").

(10)   Through discovery, defendants have obtained copies of the records from Baker's medical providers, including three treating psychiatrists, Dr. Kenneth Cohen, Dr. David Brendel, and Dr. Kerry Bloomingdale.  *Id.*  Dr. Cohen treated Baker from September of 2014 through April 4, 2016 primarily through "multiple trials of varied anti-depressants and mood stabilizers;" Dr. Brendel treated him from April 8, 2017 through February 9, 2018; and Dr. Bloomingdale treated Baker from May 31, 2017 through July 5, 2017 (ECT therapy).  Each of these providers relied primarily on Baker's reports of his mental injuries as well as Baker's description of the events or actions that caused his alleged severe depression and anxiety, and thus cross-examination of Baker's treatment providers on the existence of any mental disorders, the causation of any mental disorders, and/or the duration of any mental disorders would not be sufficient to permit defendants to evaluate Baker's mental condition or to defend against his claim for damages involving an exacerbation of his psychological disorders.

(11)   On July 9, 2019, Baker produced the expert report of Dr. Cohen who opined as follows:

a) By 3/22/16, Mr. Baker "clearly" met the Diagnostic and Statistical Manual 5 (DSM 5) criteria for Major Depressive Disorder with severe anxiety, F 33.2, and "rule out" Bipolar Disorder, F 31.81.

b) Mr. Baker's condition caused him mental impairment with difficulty concentrating and focusing, distractibility, cognitive slowing, lethargy, social withdrawal, pervasive anxiety and mental exhaustion.  These symptoms "markedly limited his activities of daily living, both professionally and personally."

c)  Mr. Baker's mental impairment had "outward, clearly obvious manifestations."[3]
A copy of Dr. Cohen's report is attached as Exhibit 5.

(12)    Dr. Cohen relied on his personal clinical experience with Baker, which according
to his records included four (4) visits in 2014, two visits in 2015 on October 28, 2015 and
November 12, 2015, six (6) visits in 2016 and two visits in 2017.  During the time Dr. Cohen
treated Baker he prescribed numerous drugs which were increased, decreased, added or
discontinued based on Baker's reporting of their efficacy, with no particular success.  During his
treatment of Baker, Dr. Cohen did not conduct any objective psychological testing or obtain any
corroborative information from sources other than Baker.[4]  Dr. Cohen did not conduct a forensic
psychiatric evaluation of Baker at any time during his treatment of Baker or in connection with
the preparation of his report.

(13)    As Baker's treating psychiatrist, Dr. Cohen necessarily relied upon Baker's
presentation of his view of the events in his personal and professional life in reaching the various
diagnoses (Generalized Anxiety Disorder with sleep disorder, Bipolar II, chronic depression, and
most recently, "Major Depressive Disorder with severe anxiety…rule out Bipolar II disorder")
reflected in his records. [5]  As his treating psychiatrist, Dr. Cohen acted as Baker's advocate in, for
example, declaring in 2015 that he had diagnosed Baker with Bipolar II disorder in order to
request a formulary exception from United Healthcare for an expensive medication, whereas his
recent expert report concluded that such a diagnosis remains in "rule out" status.

---

[3] This letter opinion is apparently offered to buttress Baker's claim that his colleagues at Perspecta were aware that
he suffered from depression and/or anxiety even though he told no one of these conditions.  Dr. Cohen has no
factual basis for his "professional opinion" that unidentified individuals who interacted with Baker in 2015, 2016
and 2017 would have known that he was suffering from depression/severe anxiety.  *See* Exhibit 5 at p. 6.
[4] Although Baker's wife has testified that she provided Dr. Cohen (with whom she was also treating) information
regarding his mental status, Dr. Cohen's notes do not reflect that Ms. Baker was present at any of Baker's
appointments.
[5] Because of the treating psychiatrist's therapeutic role, the ethical guidelines of the American Academy of
Psychiatry and the Law discourage a treating psychiatrist from "[a]greeing to be an expert witness or to perform an
evaluation of his patient for legal purposes." *See Ethical Guidelines for the Practice of Forensic Psychiatry of the
American Academy of Psychiatry and the Law.*

(14)     Because of Dr. Cohen's reliance on Baker's subjective presentation of the facts in
this case, the opinions that he reached, particularly with respect to limitations on Baker's
"activities of daily living, both professionally and personally," and the "outward, clearly obvious
manifestations," of his mental impairment may be challenged as unreliable under F. R. Ev. 702
(a)-(d).  Dr. Cohen's opinions fail to take into account the fact that an individual's personality
traits may cause him to interpret events in a distorted or self-serving way, and to rationalize his
reaction or response to those events.  *See, e.g., Sudtelgte v. Reno*, 1994 U.S. Dist. LEXIS 82
(W.D. Mo. 1994) (extensive psychiatric testimony admitted on the impact of plaintiff's
personality traits on her interpersonal relations with her colleagues in the workplace, including
mistrust and suspicion of her supervisors). Dr. Cohen had no access to information regarding
Baker's relationships with his colleagues or his superiors at Perspecta, and thus no ability to
corroborate or validate Baker's highly subjective account of those relationships or those events.

(15)     Where the plaintiff has disclosed an expert witness to testify on the existence and
extent of the plaintiff's psychological conditions, the defendant is entitled to a Rule 35
examination "to reach an independent determination of the plaintiff's alleged emotional and
mental injuries and conditions, *as well as to measure the reliability of the opinions submitted by
the plaintiff's experts*."  *Walton v. N.C. Dep't of Agric. & Consumer Services*, 2011 U.S. Dist.
LEXIS 25102 at *7 (E.D. N.C. 2011) (emphasis added).  As the Walton court concluded, where
a defendant challenges the "methodologies and practices" of the plaintiff's disclosed expert, "a
defendant in such a position should have the opportunity to explore the nature, cause and extent
of the alleged emotional injuries in order to defend against such a claim."

(16)     A forensic evaluation of Baker will not only involve a forensic psychiatric
examination of Baker, but also be informed by a preparatory review and analysis of the data

relative to other sources of information, including past medical records, pleadings and depositions taken in this case, employment records and collateral interviews, and standardized psychological testing, in order to determine the impact, if any, of long-standing personality traits or other factors on Baker's mental condition during the relevant time period.  A forensic psychiatric evaluation may provide information about Baker's alleged depression and anxiety that is not available through medical records or the cross examination of plaintiff's treating physicians.  *Denny,* 2013 U.S. Dist. LEXIS at *8-9, citing *Lahr v. Fulbright & Jaworski, L.L.P.,* 164 F.R.D. 204, 200 (N.D. Tex. 1996); *EEOC v. Grief Bros. Corp.* 218 F.R.D. 59, 63 (W.D. N.Y 2003) (in granting Rule 35 motion over the plaintiff's objection, the court noted that "Plaintiff fails to explain how Defendant, or any defendant, could fairly defend a claim for damages based on serious depression merely by cross-examination of the charging party and a treating physician, without a Rule 35 mental examination.  Even examination of a party's medical records may be inadequate to enable a defense expert to provide countervailing opinion as to the true nature and cause of such depression, or other forms of a plaintiff's emotional problems." *Id.*).

(17)    A forensic evaluation by a forensic psychiatric expert is a standard method of evaluating, *inter alia*, the validity of the diagnosis of a mental condition asserted to be a disability, the impact of an alleged impairment on the activities of daily living, and whether those impairments had manifestations that would have been apparent to individuals who interacted with the plaintiff in the workplace.  *See, e.g.*, Del Russo & Poliacoff, "*Mental Examinations in Federal Employment Litigation,*" at www.floridabar.org/the-florida-bar-journal/mental-examinations-in-federal-employment-litigation (noting that "[c]ourts have begun to recognize the

role personality disorders play in the genesis of disputes that give rise to claims of workplace discrimination.").

(18)     Given the nature of Baker's claims that he suffered discrimination, harassment and retaliation during his employment at Perspecta and the severe emotional harm he claims was causally related to that discrimination, harassment and retaliation, Baker has placed his mental condition at issue and defendants have shown "good cause" for a Rule 35 examination of Baker. *See, e.g., Beightler v. SunTrust Banks, Inc.,* 2008 U.S. Dist. LEXIS 36039 (W.D. Tenn. 2008); *EEOC v. Grief Bros. Corp*. 218 F.R.D. 59, 63 (W.D. N.Y 2003) (noting that "[d]epression…is hardly a 'garden variety' form of emotional distress…").

(19)     Counsel made a good faith effort to obtain the concurrence of plaintiff's counsel in the relief sought by this Motion, and such concurrence has been denied.

(20)     No Memorandum of Law is filed with this Motion as the granting of this Motion is within the sound discretion of the Court, and the applicable law is set forth in the Motion.

WHEREFORE, defendants respectfully request this Court:

A.     To grant their Motion; and

B.     To grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

PAUL MONTRONE, PAUL MEISTER,
PERSPECTA TRUST LLC,
BAYBERRY FINANCIAL SERVICES
CORP., LIBERTY LANE
SERVICE COMPANY LLC,
PERSPECTA HOLDINGS LLC,
PERSPECTA ENTITIES, LLC and
PERSPECTA INVESTMENTS, LLC

By their attorneys,
JACKSON LEWIS P.C.

Date:  August 30, 2019                By:    */s/* Martha Van Oot_____
                                             Debra Weiss Ford (NHBA #2687)
                                             Martha Van Oot (NHBA #963)
                                             100 International Drive, Suite 363
                                             Portsmouth, NH  03801
                                             603.559.2700 | Phone
                                             603.559.2701 | Fax
                                             debra.ford@jacksonlewis.com
                                             martha.vanoot@jacksonlewis.com

<u>Certificate of Service</u>

I hereby certify that a true copy of the above document filed through the ECF system

will be sent electronically to the registered participants identified on the Notice of Electronic

Filing System.

Dated:  August 30, 2019                       */s/* Martha Van Oot_____
                                              Martha Van Oot