# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

**Scott Baker**

Case No. 18-cv-0913-PB
v.                                     Opinion No. 2020 DNH 006

**Paul Montrone, et al.**

### MEMORANDUM AND ORDER

Scott Baker has sued Paul Montrone, Paul Meister, Perspecta
Holdings LLC, and several related entities. His principal
claims are based on the Americans with Disabilities Act of 1990
("ADA"), 42 U.S.C. § 12101 *et seq.*, and the New Hampshire Law
Against Discrimination, N.H. Rev. Stat. Ann. § 354-A ("Section
354-A"). This Memorandum and Order addresses defendants' motion
to compel arbitration of Baker's companion claims for fraudulent
inducement, breach of fiduciary duty, unjust enrichment, and
breach of contract.

## I. STANDARD OF REVIEW

The First Circuit Court of Appeals has yet to identify the
proper standard of review for a motion to compel arbitration.
Landry v. Time Warner Cable, Inc., No. 16-cv-507-SM, 2018 WL
4697578, at *1 (D.N.H. Sept. 27, 2018) (citing Pla-Fit
Franchise, LLC v. Patricko, Inc., No. 13-cv-489-PB, 2014 WL
2106555, at *3 (D.N.H. May 20, 2014)). In my view, "[i]f the
answer is apparent on the face of the complaint, the Rule

12(b)(6) standard will suffice.  If the court must consult evidence to resolve the issue, the summary judgment standard must be employed." Pla-Fit Franchise, 2014 WL 2106555, at *3 (citing Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 773–74 (3d Cir. 2013)).  Defendants' motion turns primarily on evidence that a court ordinarily may consider in resolving a Rule 12(b)(6) motion: namely, allegations made in the complaint and statements made in other documents referenced therein, such as incorporation documents and contracts.[1]  See Wilson v. HSBC Mortg. Servs., Inc., 744 F.3d 1, 7 (1st Cir. 2014).  Accordingly, I employ the Rule 12(b)(6) standard.

To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  Because, however, defendants' arbitration demand must be treated as an affirmative defense, see Sevinor v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 807 F.2d 16, 19 (1st Cir.

---

[1] The parties also reference "affidavits" in their pleadings, which in some circumstances must be evaluated under the summary judgment standard, but the function of these affidavits is merely to provide the court with copies of the relevant agreements, the authenticity of which is not disputed by either party.  No part of this order is dependent upon the affidavits themselves.

1986), they are entitled to prevail only if the facts establishing their right to arbitration are clear on the face of the complaint and any other documents that a court may consider when ruling on a Rule 12(b)(6) motion.  See Zenon v. Guzman, 924 F.3d 611, 616 (1st Cir. 2019) (applying Rule 12(b)(6) standard to an affirmative defense).  In resolving the motion, I assume the truth of Baker's well pleaded factual assertions and view the facts in the light most favorable to him.  See Germanowski v. Harris, 854 F.3d 68, 71 (1st Cir. 2017).

## II. <u>BACKGROUND</u>

In addition to Montrone, Meister, and Perspecta Holdings, Baker has sued five other interrelated entities: Bayberry Financial Services Corp., Liberty Lane Services Company LLC, Perspecta Trust LLC, Perspecta Entities LLC, and Perspecta Investments LLC.  Am. Compl., Doc. No. 30 at 1.  I begin by describing the relationships among the institutional defendants and then turn to the agreements that serve as the basis for defendants' demand for arbitration.

## A. <u>Corporate Structure</u>

Meister and Montrone directly or indirectly control all of the institutional defendants.  Meister directly holds his interest in Perspecta Holdings, Liberty Lane, and Bayberry Financial, while Montrone holds his interests in the same

entities through Bayberry BP LLC and Woburn BP LLC.[2]  Doc. No. 30 at 4; Perspecta Holdings LLC Equity Award and Admission Agreement, Doc. No. 35-3 at 14. Perspecta Holdings, in turn, holds controlling interests in Perspecta Trust, Perspecta Entities, and Perspecta Investments.  Perspecta Entities LLC Agreement, Doc. No. 35-8 at 56; Perspecta Investments LLC Agreement, Doc. No. 35-12 at 56.  Baker's employment discrimination claims arise from his joint employment as "Principal" and later as President of Perspecta Trust, Liberty Lane, and Bayberry Financial (collectively "Perspecta").  Doc. No. 30 at 4.  His common law claims arise from a 2012 Equity Award and Admission Agreement ("2012 Equity Agreement") between Baker and Perspecta Holdings, Doc. No. 35-3, and 2016 Profit Interest and Equity Award Agreements between Baker and Perspecta Entities and Baker and Perspecta Investments (collectively "2016 Equity Agreements"), Doc. No. 35-7, Doc. No. 35-11.  The relationships among the parties, as Baker describes them, are

---

[2] In a subsequently filed motion for summary judgment, defendants state that "Baker . . . held a 20% interest [in Perspecta Holdings]; an entity controlled by Montrone's family (Bayberry BP, LLC); and an entity controlled by Meister's family (Woburn BP LLC) held the remaining 80% interest."  Mem. of Law in Supp. of Defs.' Mot. for Summ. J., Doc. No. 61-1 at 3.  The slight difference in the descriptions of the corporate structure has no bearing on my analysis or decision of this motion. In any event, I follow the 12(b)(6) standard and assume the truth of Baker's well pleaded factual assertions.  See Germanowski, 854 F.3d at 71.

depicted in the diagram attached to this Memorandum and Order as Exhibit A.

**B.** **Initial Hiring and Employment**

Baker was hired to work at Perspecta in 2009.  Doc. No. 30 at 3–4.  Throughout his employment, Baker reported to Montrone and Meister — Perspecta's co-founders and managers.  Doc. No. 30 at 5.  In addition to a base salary and a bonus, Baker's offer of employment included a promise that "on [his] start date, [he would] initially be awarded stock options representing 3% of the equity in Perspecta over and above a base starting value of $15,000,000 . . . [and that a]dditional grants would be considered in the future on a periodic basis as recommended by the Compensation Committee."  Doc. No. 30 at 3.  Notwithstanding this promise, Baker did not receive an equity interest in Perspecta or any related business until 2012.  Doc. No. 30 at 4.

**C.** **2012 Equity Award**

Baker entered into the 2012 Equity Agreement with Perspecta Holdings on July 2, 2012.  Doc. No. 35-3 at 2.  The Company's Limited Liability Company Agreement recognizes two classes of membership interests that are referred to as "Class A Units" and "Class B Units."  Doc. No. 35-4 at 19.  Class A Units represent capital interests and Class B Units represent profit interests.  Doc. No. 35-4 at 19.  The 2012 Equity Agreement granted Baker sufficient Class B Units to give him a right to 20% of Perspecta

Holdings' profits when the units became fully vested.  Doc. No.

35-3 at 14.  One thousand of Baker's Class B units vested

immediately upon execution of the Agreement, with the remainder

vesting at a rate of 500 units annually until his interest fully

vested on January 1, 2015.  Doc. No. 35-3 at 3.

By entering into the 2012 Equity Agreement, Baker also

became a party to the Perspecta Holdings Limited Liability

Company Agreement.  Doc. No. 35-3 at 2.  That agreement includes

the following arbitration clause ("2012 Arbitration Clause"):

> In the event of any controversy between the parties as
> to the enforcement or interpretation of the terms and
> provisions of this Agreement, including the right to
> recover payments due hereunder, such controversy shall
> be determined by binding arbitration. . . .

Doc. No. 35-4 at 36.  The LLC Agreement also defines "Agreement"

as:

> This Limited Liability Company Agreement including all
> Admission Agreements and amendments adopted in
> accordance with the Agreement and the [Delaware Limited
> Liability Company] Act.

Doc. No. 35-4 at 4.  Accordingly, disputes between the parties

concerning the enforcement or interpretation of the 2012 Equity

Agreement are subject to the 2012 Arbitration Clause because the

Equity Agreement is an "Admission Agreement."  Doc. No. 35-3 at

2.

The 2012 Equity Agreement permitted Perspecta Holdings to

repurchase units awarded to Baker at a defined "Repurchase

Value" if Baker's employment were terminated.  Doc. No. 35-3 at
3-4.  Baker, in turn, was entitled under a "Put Right" provision
to require Perspecta Holdings to repurchase his units at a
specified percentage of the Repurchase Value, which varied
depending upon when the repurchase occurred.  Doc. No. 35-3 at
7.

**D.    Restructuring of Baker's Interest**

In late 2015, Montrone informed Baker that the 2012 Equity
Agreement would be terminated and replaced with a new and "much
better" agreement.  Doc. No. 30 at 8.  In fact, however, Meister
and Montrone intended that the new agreement would "purposely
decrease the value of Baker's stake in Perspecta in anticipation
of a planned, but undisclosed termination."  Doc. No. 30 at 15.

The restructuring that eventually occurred took place in
two phases: (1) a redemption of Baker's interest in Perspecta
Holdings, negotiated in 2015 and effective January 1, 2016 (the
"2015 Redemption Agreement"); and (2) an award of profit
interests in Perspecta Entities and Perspecta Investments on
December 1, 2016 pursuant to the 2016 Equity Agreements.

1.    Redemption Agreement

Perspecta Holdings and Baker agreed in the Redemption
Agreement that the company would redeem Baker's interest in
Perspecta Holdings for $886,000.  Defs.' Mem. of Law in Support
of Mot. to Compel Arbitration, Doc. No. 35-1 at 2.  Neither

7

party alleges that the redemption was triggered by either of the events prescribed by the 2012 Equity Agreement (namely, Baker's termination or a "Put Right" redemption initiated by Baker). Rather, the redemption was the product of an independent agreement between Montrone and Meister (as managers of Perspecta Holdings) and Baker.  Doc. No. 35-1 at 2.

Baker alleges that the redemption price received for his interest in Perspecta Holdings was "unreasonably low."  Doc. No. 30 at 16.  He states that he knew at the time that the price was low, but that he relied upon Montrone's representations that he would not be harmed by the low redemption price because his new equity award would be "much better."  Doc. No. 30 at 16. Specifically, Baker was told that the award would give him "true equity" and be more similar to the equity plans used by another related entity, Ballentine Partners.  Doc. No. 30 at 15.  Baker understood this to mean that his Class B profit interests would be replaced with Class A capital interests.  Doc. No. 30 at 15. Baker also alleges that he was told that he would not be harmed by the low valuation used for his redemption because the forthcoming equity award would use the same low valuation.  Doc. No. 30 at 26.  Baker claims that he relied on Montrone's representations that the new equity award would be superior to the 2012 Equity Agreement and he asserts that he would not have

redeemed his interest in Perspecta Holdings if he had known the content of the 2016 Equity Agreements. Doc. No. 30 at 19.

 2. <u>2016 Equity Agreements</u>

 Baker and Montrone first discussed the terms of a new equity award during a January 2016 meeting, where Baker told Montrone that he was not in an emotional position to negotiate the terms but trusted Montrone's representations that the new plan would be an improvement.[3] Doc. No. 30 at 8. Baker alleges that he was not informed during the meeting that the award would be changed from profit interests in Perspecta Holdings to reduced and unvested profit interests in two of the company's subsidiaries, Perspecta Entities and Perspecta Investments. Doc. No. 30 at 16.

 In late 2016, Baker was presented with the 2016 Equity Agreements, which granted him unvested profit interests in Perspecta Entities (a 7.1% stake) and Perspecta Investments (a 4.55% stake). Doc. No. 30 at 18. These units vested at a rate of 25% per year, starting on December 31, 2016. Perspecta Entities Equity Award, Doc. No. 35-7 at 3; Perspecta Investments Equity Award, Doc. No. 35-11 at 3.

---

[3] Baker alleges that his inability to effectively negotiate the terms of this restructuring is related to the disability underlying his ADA and Section 354-A claims. Doc. No. 30 at 8, 16.

Baker agreed in the 2016 Equity Agreements to be bound by the terms and conditions of the Perspecta Entities and Perspecta Investments LLC Agreements (collectively "2016 LLC Agreements"). Doc. No. 35-7 at 2; Doc. No. 35-11 at 2. The Equity Agreements also each specifically provide that:

> [a]ny dispute arising under this Equity Award shall be resolved exclusively in accordance with the provisions of the LLC Agreement Section 13 (Dispute Resolution).

Doc. No. 35-7 at 8; Doc. No. 35-11 at 8.

Section 13 of the 2016 LLC Agreements (collectively "2016 Dispute Resolution Procedures") establish an elaborate process for the resolution of disputes. Parties must first attempt to resolve a dispute through negotiation. Doc. No. 35-8 at 31; Doc. No. 35-12 at 31. They must then turn to mediation if negotiation fails. Doc. No. 35-8 at 31; Doc. No. 35-12 at 31. If mediation does not resolve the matter, and if the Company is party to the Dispute, the procedures specify that "[t]he company shall determine in its sole discretion whether the dispute will be subject to arbitration in accordance with Section 13.4 or subject to adjudication in accordance with Section 13.4.9." Doc. No. 35-8 at 32; Doc. No. 35-12 at 32. If the company elects to arbitrate, Section 13.4.1 states that "the party commencing the dispute must submit the matter to binding arbitration in accordance with the American Arbitration Association ("AAA") rules and procedures for the arbitration of

commercial disputes." Doc. No. 35-8 at 32; Doc. No. 35-12 at

32. Section 13.4.9 provides, however, that:

> [n]otwithstanding anything in this Section 13.4 to the
> contrary, if any party to this Agreement required
> immediate injunctive relief or other equitable relief,
> such party may file an action for such relief in the
> courts of the State of New Hampshire (the "Designated
> Courts"), to which jurisdiction the parties agree. The
> parties consent to the exclusive personal jurisdiction
> of the Designated Courts for all such purposes.

Doc. No. 35-8 at 33; Doc. No. 35-12 at 33. Section 13.5,

captioned "Adjudication," then applies "[i]n the event that a

Dispute is subject to adjudication in accordance with Section

13.3, or for injunctive or equitable relief as provided in

Section 13.4.9." Doc. No. 35-8 at 34; Doc. No. 35-12 at 34.

**E.    Baker's Termination**

Following his May 2017 meeting with Montrone and Meister,

Baker experienced what he refers to as "pressure . . . to

resign." Doc. No. 30 at 12. On December 1, 2017, Perspecta's

counsel informed Baker that his last day of employment would be

December 8, 2017. Doc. No. 30 at 13. The end of Baker's

employment was listed as a "resignation" on the agenda

circulated to Board members before their December 8, 2017

meeting. Doc. No. 30 at 13. When Baker saw this, he sent a

letter to Montrone, copying the other Board members, informing

them that he had not resigned and did not intend to resign.

Doc. No. 30 at 13.

At the December 8, 2017 Board meeting, Baker alleges he was
told that his employment was "ending," with no indication
whether the termination was for cause or without cause.  Doc.
No. 30 at 13.  Meister conceded that as of December 8, 2017,
Perspecta considered Baker's termination to be "without cause,"
but that Perspecta changed Baker's termination to "for cause" as
defined in the 2016 Equity Agreements following Baker's
initiation of proceedings with the Equal Employment Opportunity
Commission ("EEOC") and the New Hampshire Human Rights
Commission ("HRC").  Doc. No. 30 at 13.

Under the terms of the 2016 Equity Agreements, if Baker had
been terminated without cause, his interests in Perspecta
Entities and Perspecta Investments would have accelerated and
vested.  Doc. No. 30 at 20.  However, once his termination was
categorized as for cause, his stake in both companies was
forfeited.  Doc. No. 30 at 20.

**F.   Baker's Causes of Action**

Baker's Amended Complaint consists of nine counts.  Counts
I-V describe alleged violations of the ADA and Section 354-A.
Doc. No. 30 at 20-25.  His remaining counts raise common law
claims of fraudulent inducement, breach of fiduciary duty,
unjust enrichment, and breach of contract.[4]  Doc. No. 30 at 25-

---

[4] Neither party specifies whether Baker's state common law causes
of action are brought under the laws of Delaware or New

33.  Only the common law claims are subject to the motion to compel arbitration.  Defs.' Mot. to Compel Arbitration, Doc. No. 35.[5]  I outline each of the pertinent claims below.

    1.   Count VI — Fraudulent Inducement

Baker alleges in Count VI that Montrone, Meister, and Perspecta Holdings fraudulently induced him to redeem his 20% profit interest in Perspecta Holdings.  This allegation is twofold: first, Baker asserts that defendants knowingly misrepresented the value of his units; and second, Baker claims that Meister and Montrone represented to him that his redeemed

---

Hampshire.  Both parties cite freely to both states' laws.  See, e.g., Pl.'s Mem. of Law in Supp. of Obj. to Defs.' Mot. to Compel Arb., Doc. No. 53-6 at 10, 11 (Plaintiff's citations to Delaware and New Hampshire law, respectively); Defs.' Mem. of Law in Supp. of Renewed Mot. to Compel Arbitration, Doc. No. 51-3 at 10, 13 (Defendants' citations to Delaware and New Hampshire law, respectively).  Ultimately, however, I need not address whether New Hampshire or Delaware law applies to these claims because the parties have not identified any meaningful difference between the two and I am able to discern none.  See, e.g., Fratus v. Republic Western Ins. Co., 147 F.3d 25, 28 (1st Cir. 1998); Emery v. Merrimack Valley Wood Prods., Inc., 701 F.2d 985, 989 n.4 (1st Cir. 1989).

[5] In their Reply to Baker's Objection to the first Motion to Compel Arbitration, Defendants argued cursorily that, because the arbitration clauses incorporate the American Arbitration Association ("AAA") Commercial Arbitration Rules, the question of arbitrability was arguably one for the arbitrator and not for the courts.  Defs.' Reply to Pl.'s Obj. to Mot. to Compel Arbitration, Doc. No. 40 at 2.  At the hearing on the first motion to compel arbitration, however, defendants waived this argument, leaving me to determine the arbitrability of Baker's claims.  Transcript of Sept. 19, 2019 Hearing, Doc. No. 50 at 10.

interest in Perspecta Holdings would be replaced with a "much better" equity plan, even though Meister and Montrone in fact planned to reduce Baker's interest as a part of an undisclosed plan to terminate him. Doc. No. 30 at 25–28. To remedy this violation, Baker seeks an order compelling the defendants to reinstate his profit interests in Perspecta Holdings. Doc. No. 30 at 27–28.

Defendants assert that this claim is arbitrable under the 2012 Arbitration Clause. Defs.' Renewed Mot. to Compel Arbitration, Doc. No. 51 at 2.

### 2. Count VII — Breach of Fiduciary Duty

Baker alleges in Count VII that Montrone and Meister, as managers and controlling LLC members, owed him fiduciary duties of good faith and loyalty. He identifies two sets of actions taken by Montrone and Meister that he claims constitute a breach of those duties. First, he alleges that Montrone and Meister breached their fiduciary duties by inducing Baker to redeem his Perspecta Holdings profit interest at an unreasonably low price, freeze him out of the business, and ultimately terminate him. Doc. No. 30 at 28–30. Second, Baker alleges that, once his equity was reduced, Montrone and Meister breached their fiduciary duties by seeking to force his resignation and, ultimately, terminating him in a manner that caused him to forfeit his profit units in Perspecta Entities and Perspecta

Investments.  Doc. No. 30 at 28–30.  Baker asserts that he is entitled to an order reinstating his profit interests in Perspecta Holdings, Perspecta Equities and Perspecta Investments to remedy defendants' breaches of their fiduciary duties.  Doc. No. 30 at 30.

Defendants argue that the first part of Baker's breach of fiduciary duty claim is arbitrable pursuant to the 2012 Arbitration Clause.  Doc. No. 51 at 2.  Although they do not specifically argue that the second part of their claim is arbitrable, I assume for purposes of analysis that if it is, it is because of the arbitration clause embedded in the 2016 Dispute Resolution Procedures.

### 3.  Count VIII — Unjust Enrichment

Baker's allegations of unjust enrichment again deal with two distinct sets of facts.  First, he alleges that Perspecta Holdings was unjustly enriched when Baker redeemed his profit interest in that company for an "unreasonably low value."  Doc. No. 30 at 30.  Second, Baker alleges that Perspecta Entities and Perspecta Investments were unjustly enriched when his termination was changed from "without cause" to "for cause," resulting in the forfeiture of his unvested profit units in those companies.  Doc. No. 30 at 31.  Baker again argues for an order reinstating his profit units in Perspecta Holdings,

Perspecta Equities, and Perspecta Investments to remedy defendants' unjust enrichment.  Doc. No. 30 at 31.

Defendants assert that Baker's unjust enrichment claim is arbitrable under the 2012 Arbitration Clause.  Doc. No. 51 at 3. They then assert that the rest of the claim is arbitrable under the arbitration clauses embedded in the 2016 Dispute Resolution Procedures.  Doc. No. 51 at 3.

### 4. Count IX — Breach of Contract

Baker alleges in Count IX that Perspecta Entities and Perspecta Investments were contractually obligated to grant him profit units as set forth in the 2016 Equity Agreements and that the vesting of those units should have accelerated upon his "without cause" termination.  Doc. No. 30 at 32–33.  He claims that the "post hoc" change from a "without cause" termination to a "for cause" termination constituted a breach of that contract, which wrongfully resulted in the forfeiture of his unvested units.  Doc. No. 30 at 32–33.  To remedy this violation, Baker seeks an order compelling defendants to reinstate his profit units in Perspecta Equities and Perspecta Investments.  Doc. No. 30 at 33.

Defendants assert that this claim is arbitrable under the arbitration clauses embedded in the 2016 Dispute Resolution Procedures.  Doc. No. 51 at 2–3.

# III. ANALYSIS

I begin by acknowledging the strong federal presumption in favor of arbitration. See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . ."); Dialysis Access Ctr. v. RMS Lifeline, Inc., 638 F.3d 367, 376 (1st Cir. 2011) ("[D]ue regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration."). At the same time, "[a]rbitration is strictly a matter of consent, and thus is a way to resolve those disputes — *but only those disputes* — that the parties have agreed to submit to arbitration." Dialysis Access Center, 638 F.3d at 376 (emphasis in original) (quoting Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 299, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010)). "While ambiguities in the language of the agreement should be resolved in favor of arbitration, [courts] do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 294, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002) (citation omitted). Therefore,

"courts must rigorously enforce arbitration agreements according to their terms." Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 233, 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013) (internal quotation marks omitted). A party seeking to compel arbitration must demonstrate "that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted is within the clause's scope." Dialysis Access Center, 638 F.3d at 375.

Defendants base their demand for arbitration in part on the 2012 Arbitration Clause and in part on the somewhat differently worded arbitration clauses embedded in the 2016 Dispute Resolution Procedures. I examine their arguments with respect to each clause in turn.

A.    **Arbitrability of disputes under the 2012 Equity Agreement**

Defendants argue that Baker's fraudulent inducement claim and parts of his fiduciary duty and unjust enrichment claims are subject to the 2012 Arbitration Clause. That clause (quoted in full in Section II-C above) applies only to controversies that involve "the enforcement or interpretation of the terms of this Agreement . . . ." Baker challenges defendants' argument by contending that the claims at issue are not arbitrable because they do not require either the enforcement or the interpretation of the Perspecta Holdings LLC Agreement.

As a preliminary matter, I note that Baker's argument is based upon the mistaken assumption that only claims that require the enforcement or interpretation of the <u>LLC Agreement</u> are subject to the 2012 Arbitration Clause.  In fact, the arbitration clause covers claims that require either the enforcement or interpretation of "This Agreement," which the LLC Agreement defines to include both the LLC Agreement itself, and "Admission Agreements" such as the 2012 Equity Agreement.  Thus, the arbitration clause by its terms requires the arbitration of any dispute that involves the enforcement or interpretation of either the Perspecta Holdings LLC Agreement or the 2012 Equity Agreement.  With this fact in mind, I examine each of the claims at issue to determine whether they require the enforcement or interpretation of either agreement.

1.    <u>Fraudulent Inducement Claim</u>

To state a claim for fraudulent inducement, a plaintiff must show that the defendant (1) made a misrepresentation; (2) had the purpose to induce the plaintiff to act or refrain from action in reliance on that misrepresentation; (3) the plaintiff acted in justifiable reliance upon the misrepresentation; and (4) the plaintiff suffered some pecuniary loss.  <span style="color:blue">Restatement (Second) of Torts § 525 (1977).</span>[6]

---

[6] Both Delaware and New Hampshire have adopted the Restatement's definition of fraudulent inducement.  <u>See</u> <span style="color:blue"><u>Gray v. First NH</u></span>

Baker's allegation, in essence, is that he justifiably relied on the defendants' knowing misrepresentations that the 2012 Equity Agreement would be replaced with a "much better" award, and that the 2016 Equity Agreements left him worse off. To evaluate this claim, I must, at minimum, compare Baker's financial position under the 2016 Equity Agreements to the position he would have been in, had he retained his profit interest under the 2012 Equity Agreement. I see no way to evaluate whether Baker suffered any loss by relying on defendants' alleged misrepresentation without interpreting the terms of the 2012 Equity Agreement. Because the plain text of the Perspecta Holdings LLC Agreement unambiguously consigns such interpretative issues to the arbitrator, Baker's fraudulent inducement claim is within the scope of the arbitration clause and must be arbitrated.

### 2. Breach of Fiduciary Duty Claim

"To establish liability for the breach of a fiduciary duty, a plaintiff must demonstrate that the defendant owed her a fiduciary duty and that the defendant breached it." Estate of Eller v. Bartron, 31 A.3d 895, 897 (Del. 2011) (quoting Heller v. Kiernan, No. Civ. A. 1484-K, 2002 WL 385545, at *3 (Del. Ch.

---

Banks, 138 N.H. 279, 283 (1994) (citing Restatement (Second) of Torts § 525 (1977)); Harman v. Masoneilan International, Inc., 442 A.2d 487, 499 (Del. 1982) (same).

Feb. 27, 2002)); see also Schneider v. Plymouth State Coll., 144
N.H. 458, 462 (1999) (evaluating breach of fiduciary duty claim
by first addressing the nature, if any, of the fiduciary duty
owed).  Under both New Hampshire and Delaware law, LLC managers
owe fiduciary duties by default.  See N.H. Rev. Stat. Ann. §§
304-C:108, 304-C:110 (imposing default duties of care and
loyalty); Feely v. NHAOCG, LLC, 62 A.3d 649, 660-61 (Del. Ch.
2012) (explaining that LLC managers owe "default fiduciary
duties," although the Delaware "LLC Act does not explicitly
provide for fiduciary duties of loyalty or care").  LLCs may,
however, disclaim those duties under the laws of both New
Hampshire and Delaware.  See N.H. Rev. Stat. Ann. § 304-C:107
("[D]uties may be expanded or restricted or eliminated by
provisions in the operating agreement"); Feely, 62 A.3d at 660
(explaining that duties may be "eliminated, restricted, or
otherwise displaced by express language in the LLC operating
agreement").

     Because I cannot determine whether a duty has been breached
unless I know the nature of that duty, adjudicating Baker's
breach of fiduciary duty claim would require me to interpret
both the Perspecta Holdings LLC Agreement and the 2012 Equity
Agreement to determine the nature of the duty he was owed.
Section 5.11 of the Perspecta Holdings LLC Agreement, for
example, purports to disclaim or limit many aspects of the

Managers' fiduciary duties.  Doc. No. 35-4 at 16.  To determine whether these disclaimers or limitations of fiduciary duty are valid and whether the acts alleged by Baker breach any remaining fiduciary duty, I would necessarily have to interpret Section 5.11.  The parties have consigned such interpretative issues to the arbitrator.  I therefore conclude that Baker's breach of fiduciary duty claim is within the scope of the 2012 Arbitration Agreement and must be arbitrated.

     3.   <u>Unjust Enrichment Claim</u>

"Unjust enrichment is an equitable remedy, found where an individual receives 'a benefit which would be unconscionable for him to retain.'" Clapp v. Goffstown Sch. Dist., 159 N.H. 206, 210 (2009) (emphasis omitted) (quoting Kowalski v. Cedars of Portsmouth Condo. Assoc., 146 N.H. 130, 133 (2001); <u>see also</u> In re Verizon Ins. Coverage Appeals, ___ A.3d ___, 2019 WL 5616263, at *7 (Del. Oct. 31, 2019) ("Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.") (internal citation and quotation marks omitted).  Central to Baker's unjust enrichment claim against Perspecta Holdings is his contention that his 20% equity interest in Perspecta Holdings was redeemed "for an unreasonably low value."  Doc. No. 30 at 30.

I see no logical way to determine the reasonable value of Baker's interest in Perspecta Holdings under the 2012 Equity Agreement without interpreting the Agreement. I would need, for example, to determine whether Baker's interest had vested at the time he redeemed it, and what, if any, redemption price he was entitled to under the 2012 Equity Agreement's put right provision. This would require me to interpret, at minimum, Sections 1(c) and 4 of the 2012 Agreement. Doc. No. 35-3 at 3, 7. Yet again, this is a matter of interpretation that the parties have consigned to the arbitrator. Thus, Baker's unjust enrichment claim against Perspecta Holdings is within the scope of the arbitration clause and must be arbitrated.

**B.** **Arbitrability of disputes under the 2016 Equity Agreements**

Defendants argue that Baker's remaining claims are subject to the arbitration clauses embedded in the 2016 Dispute Resolution Procedures. Baker responds by contending that his claims are exempt from arbitration pursuant to the equitable relief exemption contained in Section 13.4.9 of the 2016 LLC Agreements. This disagreement turns on whether Section 13.4.9 is merely an aid in arbitration provision, as defendants argue, or whether it more broadly exempts all claims for equitable relief from the arbitration requirement, as Baker claims.

I resolve this dispute by using general rules of contract interpretation.[7]  See Sherman v. Graciano, 152 N.H. 119, 121 (2005) (citing Robbins v. Salem Radiology, 145 N.H. 415, 417 (2000)).  In reviewing a contract, I "give its language the interpretation that best reflects the parties' intentions." Robbins, 145 N.H. at 417–18 (quoting Butler v. Walker Power, Inc., 137 N.H. 432, 435 (1993)).  "Absent ambiguity, the parties' intent will be determined from the plain meaning of the language used in the contract."  In re Liquidation of Home Ins. Co., 157 N.H. 543, 546 (2008) (quoting Cloutier v. City of Berlin, 154 N.H. 13, 17 (2006)).  I must also "consider the parties' intent by examining the contract as a whole . . . ." N.A.A.P. Realty Trust v. CC Enters., 147 N.H. 137, 141 (2001).

Here, the plain language of Section 13.4.9 establishes that all claims for equitable relief are exempt from the arbitration requirement.  This is so because Section 13.4.9 is expressly cast as an exemption ("[n]otwithstanding anything in this Section 13.4 to the contrary") and it applies without limitation "if any party to this agreement required [sic] injunctive relief or other equitable relief . . . ."  Doc. No. 35-8 at 33; Doc.

---

[7] Both LLC Agreements name New Hampshire in their choice-of-law provisions.  Doc. No. 35-8 at 35-36, Doc. No. 35-12 at 35-36.  I can see no reason refer to Delaware law for these state common law claims, and neither party has suggested one.

No. 35-12 at 33.  Because Section 13.4.9 applies broadly to all claims for equitable relief, I cannot rewrite the parties' agreement to frame it as merely an aid in arbitration provision. See, e.g., Archer & White Sales, Inc. v. Henry Schein, Inc., 935 F.3d 274, 283–84 (5th Cir. 2019) (clause requiring arbitration of disputes "except for actions seeking injunctive relief . . ." does not compel arbitration of equitable claims); Frydman v. Diamond, No. 1:14-cv-8741-GHW, 2015 WL 5294790, at *7 (S.D.N.Y. Sept. 10, 2015) (arbitration clause subject to exception for "any dispute . . . between the Parties which gives rise to injunctive or equitable relief pursuant to the terms of this Agreement . . ." does not require arbitration of equitable claims).

Any claim that Section 13.4.9 is merely an aid in arbitration provision is further undermined when Section 13.4.9 is construed together with the rest of Section 13.  Section 13.3.1 treats Section 13.4.9 as an alternative to arbitration rather than an aid in arbitration provision because it requires the company to determine whether a dispute involving the company "will be subject to arbitration in accordance with Section 13.4 or subject to adjudication pursuant to Section 13.4.9."  Doc. No. 35-8 at 32 (emphasis added); Doc. No. 35-12 at 32 (emphasis added).  Section 13.3.2 treats Section 13.4.9 the same way because it specifies that "[a]ll Disputes that do not include

25

the Company as a party will be subject to adjudication pursuant to Section 13.4.9, <u>unless</u> all parties agree to arbitrate in accordance with Section 13.4." Doc. No. 35-8 at 32 (emphasis added); Doc. No. 35-12 at 32 (emphasis added). In light of these provisions, to read Section 13.4.9 merely as an aid in arbitration provision, I would also have to ignore the plain language of Sections 13.3.1 and 13.3.2. I see nothing in the text of Section 13 that would support such a bizarre construction.

Defendants cite several cases from other circuits in which a court construed a broad equitable exemption from a comprehensive arbitration clause as an aid in arbitration provision. <u>See, e.g.</u>, <u>Remy Amerique, Inc. v. Touzet Distrib., S.A.R.L.</u>, 816 F. Supp. 213 (S.D.N.Y. 1993); <u>Info. Sys. Audit & Control Ass'n Inc. v. Telecom. Sys., Inc.</u>, No. 17 C 2066, 2017 WL 2720433, at *1 (N.D. Ill. June 23, 2017); <u>Davis v. SEVA Beauty, LLC</u>, C17-547 TSZ, 2017 U.S. Dist. Lexis 148434, at *5 (W.D. Wash. Sept. 13, 2017). These decisions are unpersuasive to the extent that they effectively ignore the plain language of the exemption in an effort to reconcile it with an arbitration clause. In any event, the present case is distinguishable because the 2016 Dispute Resolution Procedures do not include a comprehensive arbitration clause. Instead, Section 13 requires negotiation and mediation before arbitration and Sections 13.3.1

and 13.3.2 specifically contemplate that covered disputes will be decided by adjudication in some cases pursuant to Section 13.4.9 rather than through arbitration pursuant to Section 13.4.1.  Because the arbitration clause at issue here does not mandate the arbitration of all covered claims, it is not in tension with an exemption that permits equitable claims to be resolved by adjudication rather than arbitration.[8]

## IV. <u>CONCLUSION</u>

For the reasons explained above, defendants' renewed motion to compel arbitration, Doc. No. 51, is granted with respect to Count VI against Montrone, Meister, and Perspecta Holdings; Count VII against Montrone and Meister for claims arising under the 2012 Equity Award; and Count VIII against Perspecta Holdings.  The motion is denied with respect to Count VII against Montrone and Meister for claims arising under the 2016 Equity Award; Count VIII against Perspecta Entities and

---

[8] By referring to Baker's claims as "so-called 'Equity Claims,'" defendants also appear to contest whether the relief Baker seeks is truly equitable in nature.  Doc. No. 35-1 at 4.  Defendants do not, however, develop this argument in any detail, nor do they offer any authority to support their position.  Because defendants' argument remains undeveloped, I decline to consider it.  See J. Cajigas & Assoc., PSC v. Municipality of Aguada, No. 13-1359 (JAF), 2014 WL 320653, at * 2 (D.P.R. Jan. 29, 2014) ("Perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived.") (citing Medina-Rivera v. MVM, Inc., 713 F.3d 132, 140-41 (1st Cir. 2013) ("developing a sustained argument out of . . . legal precedents" is a party's "job") (internal quotation marks omitted).

Perspecta Investments; and Count IX against Perspecta Entities and Perspecta Investments.

**SO ORDERED.**

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

January 10, 2020

cc: Jennifer B. Furey, Esq.
Jennifer Mikels, Esq.
Terri L. Pastori, Esq.
Beth A. Deragon, Esq.
Debra Weiss Ford, Esq.
Martha Van Oot, Esq.



**Plaintiff**

**Defendants**

Baker

Meister

Montrone

Bayberry BP LLC & Woburn BP LLC

The 2012 Admission Agreement granted Baker Class B units in Perspecta **Holdings** equivalent to a 20% profit interest

Perspecta **Holdings** LLC

Baker was co-employed by these three entities

**Liberty Lane** Service Co. LLC

Perspecta **Trust** LLC

Perspecta **Entities** LLC

Perspecta **Investments** LLC

Succeeded by

**Bayberry Financial** Services Corp.

The 2016 Equity Awards granted Baker Class B units in Perspecta **Entities** and Perspecta **Investments** equivalent to a 7.1% and a 4.55% profit interest in each, respectively

**Baker v. Montrone, et al.**

1:18-cv-00913-PB